# United States Court of Appeals
## For the First Circuit

No. 15-2109

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO ROMÁN-HUERTAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Torruella, Lynch, and Thompson,
Circuit Judges.

Eleonora C. Marranzini, Research and Writing Specialist, Eric Alexander Vos, Federal Public Defender, and Vivianne M. Marrero-Torres, Assistant Federal Public Defender, Supervisor, Appeals Section, on brief for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, on brief for appellee.

February 9, 2017

**TORRUELLA, Circuit Judge**. Julio Román-Huertas ("Román") pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). His plea agreement recommended a total offense level under the United States Sentencing Guidelines (the "Guidelines") of seventeen. At his sentencing hearing, Román objected to the total offense level of seventeen, arguing that it should instead be twelve because his prior felony was not "a controlled substance offense" under the Guidelines. Relying on an untranslated Spanish document, the district court ruled that his total offense level was seventeen. The Guidelines' recommended sentence was twenty-seven to thirty-three months' imprisonment, but the district court sentenced Román to forty-six months' imprisonment. Because the district court improperly relied on an untranslated document, we vacate Román's sentence and remand for resentencing.

## I. BACKGROUND

On March 8, 2014, while Román and another man were driving in San Juan, Puerto Rico, Román fired one shot from his pistol into the air. Agents from the Puerto Rico police department were in the area, and they arrested Román and seized Román's pistol and an additional magazine. Román was charged with being a felon in possession of a firearm.

On April 16, 2014, Román entered into a plea agreement, which included "advisory Guideline calculations" of a base offense level of twenty and a three-level credit for acceptance of responsibility, for a total offense level of seventeen. This calculation assumed that Román's prior conviction had been a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A). Although the parties did not stipulate to a Criminal History Category ("CHC"), the plea agreement's advisory Guideline calculations indicated that Román's recommended sentence would be twenty-seven to thirty-three months if he had a CHC of II. "The parties agree[d] to recommend the lower end of the applicable guideline range."

On August 12, 2014, the probation officer filed a presentence investigation report (the "PSR"). The PSR calculated a total offense level of seventeen and a CHC of II, resulting in a recommended sentence of twenty-seven to thirty-three months. Román's sentencing memorandum, filed on September 5, 2014, stated that his "offense level [was] expected to be level 17." On August 27, 2015, the probation officer filed an addendum to the PSR, which stated that Román "ha[d] not filed any written objections."

On September 2, 2015, more than a year after the PSR was filed, Román filed objections to it. Román argued that the PSR

improperly calculated his total offense level as seventeen, because Román's prior conviction under Article 406 of the Puerto Rico Controlled Substances Act, P.R. Laws tit. 24, § 2406, "is not a 'controlled substance offense' in regards to the Guideline Section 2K2.1." Specifically, Román asserted that "not all offense[s] under [Article 406] meet [U.S.S.G. § 4B1.2(b)'s] definition" of a controlled substance offense.[1] Thus, Román contended that his total offense level should be twelve,[2] not seventeen as the PSR and his plea agreement recommended.

The district court held a sentencing hearing the next day, and Román affirmed that he "reinstate[d] this objection" to the total offense level of seventeen. The Government responded that under "a modified categorical approach" the district court could "examine if there are existing documents that allow us to determine whether [Román's] particular violation of [Article] 406" was a controlled substance offense. The district court then stated that it had "the document here which has the legal basis."[3]

---

[1]  U.S.S.G. § 4B1.2(b) provides the Guidelines' definition of a "controlled substance offense" and is cross-referenced by other sections of the Guidelines, including U.S.S.G. § 2K2.1(a)(4)(A).

[2]  If his prior conviction was not for a controlled substance offense, Román's base offense level would be fourteen, rather than twenty, see U.S.S.G. § 2K2.1(a)(6), but he would only be eligible for a two-level acceptance of responsibility credit, see U.S.S.G. § 3E1.1(b).

[3]  The district court and the parties used both "document" and

-4-

According to the district court, that document "indicate[d] . . . that the charges were for violation of . . . [A]rticle 401 that entails distribution of a controlled substance" but were "reduced to a violation of [A]rticle 406." The district court further explained that "the description" in "this criminal complaint . . . entails and encompasses the possession with intent to distribute a controlled substance." The district court then stated that "the offense charged meets the definition of . . . a controlled substance offense." When Román asserted "that the document[s] that the Court can examine are limited," the district court replied that it had "exercise[d its] due diligence in terms of checking that we had the proper documents."

The document the district court relied on was never entered into the record, and so it is not available to us on appeal. The parties agree, and it is clear from the record, however, that the document was in Spanish.

During the argument concerning the proper calculation of Román's total offense level, the Government opposed Román's

---

"documents" to describe what they were reviewing. It is not clear from the hearing transcript whether there was a single document or multiple documents, and the document or documents are not part of the record. Except where quoting from the transcript, we will use "document" to describe what the parties reviewed.

To facilitate meaningful review of sentences, we urge parties to include in the appellate record any documents relied upon below.

arguments on the merits.  It never objected, either in writing or at the hearing, to Román's untimely objection to the PSR.  After Román presented his mitigating facts, the Government recommended a sentence at the "lower end" of the Guidelines' recommended range.

After the exchange concerning the nature of the controlled substance offense, Román "ask[ed] the Court to follow the joint recommendation and impose a sentence of 27 months."  The district court ultimately sentenced Román to forty-six months' imprisonment, highlighting the fact that Román had fired his gun into the air "while driving a vehicle" in a city, reflecting a "blatant disregard for the law and public safety."

Román timely appealed his sentence.  He argues that the district court (1) committed a procedural error when it determined that Román's prior conviction was a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(4)(A), (2) committed plain error by relying on an untranslated Spanish document, (3) committed a procedural error by failing to justify its upward variance, and (4) imposed a sentence that was substantively unreasonable.

## II.  ANALYSIS

### A.  The English Language Requirement and the Standard of Review

The Jones Act requires that "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico . . . be conducted in the English language."  48

U.S.C. § 864. "It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English." United States v. Millán-Isaac, 749 F.3d 57, 64 (1st Cir. 2014) (quoting United States v. Rivera-Rosario, 300 F.3d 1, 5 (1st Cir. 2002)). This rule applies to all stages of a federal court proceeding, including a sentencing hearing.[4] Id.

Román concedes that he did not object to the district court's use of the untranslated document. The parties therefore assume that the plain error standard of review applies. They are incorrect. In Rivera-Rosario, the defendants' attorney did not object to the presentation of Spanish tape-recordings and documents to the jury and in fact objected to an English translation it considered faulty. 300 F.3d at 5. We rejected the Government's argument that the plain error standard applied, holding that the district court had an "independent duty" to ensure the proceedings were conducted in English, and so "we relieve[d] the parties of their usual duty to contemporaneously object." Id. at 6-7. Instead, we held that "violations of the English language requirement will constitute reversible error whenever the

_____

[4] The fact that a probation officer, rather than a party, supplied the untranslated document to the district court is irrelevant to our analysis. The Jones Act applies with equal force to any material that a probation officer wants the district court to consider at sentencing.

appellant can demonstrate that the untranslated evidence has the potential to affect the disposition of an issue raised on appeal." Id. at 10.  We reaffirmed this standard of review in Millán-Isaac, rejecting the Government's assertion that we had "confined Rivera-Rosario to its facts" and declining to follow any opinions that implied a different standard.  Millán-Isaac, 749 F.3d at 64 n.1. We will therefore overturn Román's sentence if "the untranslated [document] has the potential to affect the disposition" of his appeal.[5]  Id. at 64.

## B.   Román Did Not Waive His Objection to the Calculation of His Total Offense Level

We must first address the Government's contention that Román knowingly waived his objection to the calculation of his total offense level.  "Waiver, where it occurs, is treated as an 'intentional,' and therefore permanent, abandonment of a position."  United States v. Torres-Rosario, 658 F.3d 110, 115 (1st Cir. 2011) (citing United States v. Walker, 538 F.3d 21, 22 (1st Cir. 2008)).  "[A] waived issue ordinarily cannot be

---

[5]   In Rivera-Rosario, we reviewed all five of the defendants' convictions for reversible error under the Jones Act, even though only two had "raised this issue on appeal," because "violations of the English language requirement . . . have the potential to eviscerate a party's right to meaningful appellate review."  300 F.3d at 10 n.11.  We therefore review Román's Jones Act claim under the correct standard even though he mistakenly believed that it was subject to plain error review.

resurrected on appeal." United States v. Rodríguez, 311 F.3d 435, 437 (1st Cir. 2002). "By contrast, a mere failure to object 'forfeits' a claim, so review on appeal is [generally] only for plain error." Torres-Rosario, 658 F.3d at 115. If Román waived his objection to his calculated total offense level of seventeen, the district court's use of the untranslated document -- which related only to that calculation -- cannot affect the disposition of his appeal.

The Government identifies three ways in which Román waived his objection: first, by stipulating to the calculation in the plea agreement; second, by failing to file a written objection to the PSR until the day before the sentencing hearing; and third, by acquiescing at the sentencing hearing. The Government did not raise Román's stipulation or untimely objection before the district court, however, and instead addressed the merits of Román's objection, and so it waived the first two asserted bases. See United States v. Castro-Taveras, 841 F.3d 34, 54 (1st Cir. 2016) ("[T]he government did not argue forfeiture and instead addressed the merits of [the] claim . . . . Hence, the government waived its forfeiture argument . . . ."); Sotirion v. United States, 617 F.3d 27, 32 (1st Cir. 2010) (holding that the government waived its procedural default defense by failing to raise it in the district court). For its third basis, the

-9-

Government relies on a statement by Román's counsel at the sentencing hearing: "Then Your Honor I would ask the Court to follow the joint recommendation and impose a sentence of 27 months." Absent context, this may seem like acquiescence, but it came after the district court had already ruled that "the offense charged meets the definition of . . . a controlled substance offense" and that it "had the proper documents" to make that determination. Accepting the district court's ruling and moving to a fallback position is neither waiver nor forfeiture.

**C. The Untranslated Document Had the Potential to Affect the Disposition of Román's Appeal**

We must therefore examine whether the district court's use of the untranslated document "has the potential to affect" Román's argument that his prior conviction under Article 406 was not a controlled substance offense. U.S.S.G. § 4B1.2(b) defines a "controlled substance offense" to include the violation of a state law "that prohibits . . . the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." This encompasses "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1. It does not, however, include mere possession offenses. See United States v. Ramos-González, 775 F.3d 483, 507 n.27 (1st Cir. 2015).

Román previously pled guilty to Article 406, but, as the Government concedes, that statute "encompasses both predicate and non-predicate conduct." It was the Government's burden to establish, through the kinds of documents approved by Shepard v. United States, 544 U.S. 13, 17 (2005), that Román's prior conviction was a controlled substance offense. United States v. Dávila-Félix, 667 F.3d 47, 55 (1st Cir. 2011). The Government contends that Román "does not refute -- and indeed, concedes" that he was charged under Puerto Rico Laws tit. 24, § 2401 ("Article 401"), which the Government asserts must be a controlled substance offense.[6] But the Government must show that Román was convicted of a controlled substance offense, and he pled guilty under Article 406, not Article 401. To bridge this gap, the Government further asserts that "the record" shows that Román was "charged under Article 401's 'possession with intent to distribute' modality," and so his Article 406 guilty plea was a distribution conviction. The Government cites to the PSR in support of this proposition, however, and a PSR is not "an approved source for determining whether" a defendant's conviction was based on a controlled

---

[6] Román disputes whether convictions under Article 401 are categorically controlled substance offenses. We have previously stated that they are not, Dávila-Félix, 667 F.3d at 56, but we do not rely on that holding here, and so we need not address the Government's argument that we were not apprised of controlling Puerto Rico case law in that case.

substance offense. Ramos-González, 775 F.3d at 506 (citing United States v. Carter, 752 F.3d 8, 20 (1st Cir. 2014)).

Because the district court relied only on the untranslated document to calculate Román's total offense level, that document "affect[s] the disposition" of his appeal. See Millán-Isaac, 749 F.3d at 64. We therefore must vacate Román's sentence and remand for resentencing. We need not reach Román's remaining claims of error.

Finally, we briefly address resentencing. The untranslated document was not evidence, and so any certified translation would constitute new evidence. In general, "the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision" on remand for resentencing. United States v. Dávila-Félix, 763 F.3d 105, 110 (1st Cir. 2014) (alteration omitted) (quoting United States v. Ticchiarelli, 171 F.3d 24, 32 (1st Cir. 1999)). We have previously allowed additional factfinding where the Government did not have an incentive to present evidence, but not "where the government asked for the enhancement but failed to adduce sufficient proof for its imposition -- a situation in which there would not likely be reason to permit a second bite at the apple." United States v. Montero-Montero, 370 F.3d 121, 124 (1st Cir. 2004). Here, the Government asked for a total offense level of

seventeen "but failed to adduce sufficient proof for its imposition." See id. The Jones Act requires federal courts to conduct proceedings "in the English language," 48 U.S.C. § 864, and our case law has reaffirmed this many times. E.g., Rivera-Rosario, 300 F.3d at 5; Millán-Isaac, 749 F.3d at 64. The Government therefore had every incentive to ensure that the district court relied only on evidence presented in the English language. "[N]o party -- including the government -- is entitled to an unlimited number of opportunities to seek the sentence it desires." Ramos-González, 775 F.3d at 508 (quoting Dávila-Félix, 763 F.3d at 113). On remand, therefore, the Government may not present new evidence of Román's prior conviction.

### III. CONCLUSION

We vacate Román's sentence and remand for resentencing because the district court improperly relied on an untranslated document in calculating Román's offense level.

**Vacated and Remanded.**